STATE of Tennessee, Appellee,

v.

H. B. MYERS, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

Jan. 7, 1982.

Hughie Ragan, Jackson, for appellant.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, George W. Hymers, Dist. Atty. Gen., Jerry Woodall, Asst. Dist. Atty. Gen., Jackson, for appellee.

OPINION

TATUM, Judge.

The defendant, H. B. Myers, was convicted of perjury in the drug trial of *State v. Billy Joe Williams*, with punishment of imprisonment for not less than 3 years nor more than 5 years. On this appeal, he attacks the sufficiency of the evidence and presents numerous other issues for review. After reviewing the record, we find merit in the issue attacking the sufficiency of the evidence.

The indictment in this case, charges in pertinent part that the defendant,

"did unlawfully, willfully, corruptly, falsely and feloniously swear in regard to a material matter concerning the trial of his codefendant, BILLY JOE WILLIAMS on the trial of the aforesaid BILLY JOE WILLIAMS who was under indictment for a felony to-wit: the Sale of a Schedule II drug as classified in Section 52–1415, in violation of Section 52–1432, Tennessee Code Annotated, to-wit: that he the aforesaid H. B. MYERS stated under oath that BILLY JOE WILLIAMS had not participated in the direct hand to hand sale of DILAUDID, a Schedule II drug, to an undercover police officer and denied he had ever testified otherwise when in truth, and in fact he had previously testified that BILLY JOE WILLIAMS had participated in the direct hand to hand sale of DILAUDID, a Schedule II drug in the Circuit Court of Madison County, Tennessee, Division II in Case No. 9248 on the 22nd day of May, 1979, A.D."

In an indictment for perjury, allegations of the falsity of the matter on which the perjury is assigned, are essential. T.C.A. § 40–1815. We note that the indictment states that Myers testified "that Billy Joe Williams had not participated in the direct hand to hand sale of dilaudid—". The indictment does not charge that this testimony of the defendant was false.

The indictment further charges that the defendant "denied he had ever testified otherwise when in truth, and in fact he had

previously testified that Billy Joe Williams had participated in the direct hand to hand sale of dilaudid." This is the only assignment of false testimony in the indictment.

The defendant originally was jointly indicted with Billy Joe Williams for a felony drug offense involving the dilaudid transaction. The defendant entered a guilty plea and, during a hearing conducted upon the guilty plea, he agreed to the truth of a statement made by the Assistant District Attorney General concerning the facts of the case. This was the basis for the allegations in the indictment concerning previous testimony of the defendant. We quote from the transcript the pertinent portion of the hearing on the defendant's guilty plea:

"THE COURT: General Woodall, what are the facts in these cases?

\* \* \* \* \* \*

GENERAL WOODALL: In file number 92—case number 9248 and 9249 the facts would show that on the date and time alleged in the indictment that the defendant knowingly possessed with the intent to sell and also made a direct hand to hand sale—participated in same with a co-defendant, Mr. Williams, to a undercover Tennessee Bureau of Narcotics undercover agent.

THE COURT: All right, Mr. Myers, you have heard the statements made by the General. Are those statements he made true?

MR. MYERS: Yes."

At the trial of Williams' case, a TBI Agent testified that Myers had approached him and asked if he wanted to buy narcotics. After the agent answered in the affirmative, Myers and the agent proceeded in Myers' car to a parking lot in Jackson. After waiting for a time, Williams entered the parking lot in a Volkswagon and parked it near the Myers' vehicle. Myers received $525 from the agent to pay to Williams for a quantity of dilaudids. Myers got out of the car and entered Williams' car and then Myers returned with the dilaudids.

1. Williams was a "participant" as an aider and abettor if the testimony of Myers, given at Williams' trial, was true. *State v. Williams*

Myers admittedly told Assistant District Attorney Woodall immediately before trial that he had given Williams the money and obtained from Williams the drugs that he gave to the agent. However, when Myers testified as a State's witness at Williams' trial, Myers testified that he did not get the drugs from Williams or give Williams money. He testified that he (Myers) had the drugs when they met Williams at the parking lot and that he only procured Williams and pretended that he was acting as a go-between because he was afraid the undercover agent would rob him if the agent knew that he had the drugs or the money.[1] The trial court declared Myers to be a hostile witness and for the purpose of impeachment the Assistant District Attorney questioned Myers and received answers as follows:

"Did you, when you pled guilty, in Court, on May 22nd, 1979, I gave the fact situation, or someone from my office, did they not?

And, they said that 'On the date and time alleged in the indictment, the proof would show that the defendant H. B. Myers went to the Madison South Shopping Center with an Agent for the TBI and after he got there he obtained $525.00 from the TBI Agent, walked to the car of the defendant, Billy Joe Williams, and there gave him the money and obtained the narcotics and then gave them to the TBI Agent.' "

\* \* \* \* \* \*

"Q68. Was not that general statement made at that time?

A. I—I pled guilty to possession and sale.

Q69. Are you saying you don't remember whether that statement was made or not?

A. No, sir, I don't. It was my understanding that I was pleading guilty to me selling—possessing and selling.

(unreported opinion), filed July 2, 1981, Jackson, Tennessee.

Q70. You may have—that may have been transmitted to the Court, you don't remember?

A. I sure don't. I don't remember if it was made or not."

The above testimony is the basis for the perjury charge. The facts contained in the question asked Myers by the Assistant District Attorney at Williams' trial for impeachment purposes, are not substantially the same as those facts stated by the Assistant District Attorney at Myers' guilty plea proceeding. The question asked at Williams' trial incorporated the facts that Myers got the money from the TBI Agent, walked to Williams' car, gave Williams $525, obtained narcotics from Williams and then delivered them to the TBI Agent. The actual statement made by the Assistant District Attorney at Myers' guilty plea hearing, to which Myers agreed, was that Myers made a hand to hand sale of the narcotics, and that Williams participated.

▆▆▆ While Myers testified, at Williams' trial, that he did not recall making the previous statement at the guilty plea hearing, a comparison of the two statements reveals that Myers, in fact, did not make the statement as propounded at Williams' trial. There is no evidence that the defendant "denied—he had previously testified that Billy Joe Williams had participated in the direct hand to hand sale of dilaudid," as charged in the indictment.[2] He was not asked this question at Williams' trial.

Further, he did not deny making the previous statement; he testified that he did not remember it. There is no evidence that this is false.

▆▆▆ There is evidence that the defendant falsely testified at Williams' trial that Williams did not bring narcotics to the parking lot or receive money for the narcotics. But,

as stated above, the indictment did not negate the truth of this testimony. While our statutes no longer require the formalities, niceties, and technicalities of the common law, they require care in drafting. An indictment must contain a proper allegation of the falsity of the matter on which the perjury is assigned. *Lawson v. State*, 71 Tenn. 309 (1879).

There are other issues presented but since we find no evidence to support the verdict, the remaining issues are rendered moot.

The judgment of the trial court is reversed and the case is dismissed.

DWYER, J., concurs.

O'BRIEN, J., concurs in a separate opinion.

O'BRIEN, Judge, concurring.

I concur fully with the majority opinion. I think it essential to say further that perjury is a continuing, pervasive evil in criminal cases at the trial level, and one which necessitates constant monitoring by trial judges.

The ability of trial juries to discern the difference between truth and falsehood in the testimony of the witnesses emphasizes one of the virtues of the jury system. Nonetheless the proliferation of false swearing requires eternal vigilance on the part of every court officer to insure integrity in the administration of criminal justice.

---

**2.** It is not essential that the specific words used in a witness's testimony at a prior trial be quoted to a witness in laying a foundation to prove prior inconsistent testimony of the witness. However, it is essential that the substance of the prior testimony be stated to the witness. *James v. State*, 506 S.W.2d 797

(Tenn.Cr.App.1973). The case at hand illustrates that the best practice is to read the prior testimony to the witness when a transcript is available. When an examiner substantially misstates prior testimony, a witness is not testifying falsely when he denies giving it.